**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

OFFICE OF THE FEDERAL PUBLIC
DEFENDER, MIDDLE DISTRICT OF
TENNESSEE,

      *Plaintiff*,

  v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

      *Defendants*.

Civil Action No. 23-02476 (AHA)

**<u>Memorandum Opinion and Order</u>**

The Office of the Federal Public Defender for the Middle District of Tennessee ("OFPD"),

which represents Ricky Allen Fackrell in habeas proceedings, sent a Freedom of Information Act

("FOIA") request to the U.S. Marshals Service, part of the Department of Justice. The request

asked for five categories of records, including information about the Marshals' security presence

at Fackrell's trial and his transportation to the courthouse each day. ECF No. 1 ¶ 14. OFPD filed

this case against the Justice Department and the Marshals after they failed to timely respond to the

FOIA request. *Id.* ¶ 2.

After Defendants produced responsive records and redacted certain information, each party

moved for summary judgment. *See* ECF Nos. 15, 22. The court granted in part and denied in part

each party's motion. ECF No. 28 at 8. Relevant here, the court rejected Defendants' reliance on

FOIA exemption 7(E) to redact information related to the security measures and personnel needed

for the movement of in-custody witnesses during Fackrell's trial. *Id.* at 2–4. The court explained

that Defendants' briefing made "no effort to explain how their withholdings fall within the textual

limit of being techniques, procedures, or guidelines for law enforcement investigations or prosecutions." *Id.* at 3. And it concluded that even "if such an argument could be developed, Defendants have not made it here and it was their burden to do so." *Id.* at 4.

Despite the conclusory nature of their arguments at summary judgment, Defendants now move for reconsideration of the court's memorandum opinion and order requiring the Marshals to release material withheld under exemption 7(E). ECF No. 30. Both in Defendants' motion for reconsideration and at a hearing held by the court, Defendants still failed to meaningfully engage with the text of the exemption and basic line-drawing questions that result from their position. *See* Draft Hr'g Tr. at 5–14 (Feb. 26, 2026) (Defendants resorting to vague statements, such as that "operational plans constitute techniques and procedures," while unwilling to engage with the text of exemption 7(E) or meaningfully address the line-drawing problems). Although the court does not excuse Defendants' failure to raise legal arguments, the court will exercise its discretion to grant the motion for reconsideration in part, finding that the record before the court supports withholding some information under exemption 7(E).

## I.    Discussion

The decision whether to grant a motion for reconsideration under Rule 59(e) "is discretionary," and the motion "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Pigford v. Perdue*, 950 F.3d 886, 891 (D.C. Cir. 2020) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)). "Although the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration or amendment of a judgment is nonetheless an extraordinary measure." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018). Courts have in some cases granted motions for reconsideration where an agency supplements its justifications for withholding records under the FOIA exemptions. *See,*

*e.g.*, *Haleem v. U.S. Dep't of Def.*, No. 23-cv-1471, 2025 WL 2097495, at *1–3 (D.D.C. July 25, 2025) (granting motion for reconsideration after the agency clarified how materials could be used to circumvent the law).

After the court's summary judgment opinion, Defendants released some of the information they withheld under exemption 7(E). ECF No. 30-1 ¶ 7. Defendants move for reconsideration to withhold several categories of information, including the names of the Bureau of Prisons ("BOP") facilities where the prosecution in-custody witnesses were held; the number of deputies associated with the movements of Fackrell, Fackrell's co-defendant Christopher Cramer, and the in-custody witnesses; the number of deputies assigned to the district and specifically assigned for the trial; the manner in which Fackrell and Cramer were restrained during their movements from the BOP facility to the courthouse; where Fackrell and Cramer were held and how they were restrained in the cellblocks and the non-public areas of the courthouse; cellblock contingencies within the courthouse; emergency response protocols within the courthouse; deputy equipment; means of communication during the transport of the inmates; and information on how to out-process Fackrell and Cramer from the BOP facility for transport to the courthouse, along with specific details pertaining to the transport. *Id.* ¶ 8; ECF No. 30 at 2. Of those categories, Plaintiff no longer seeks production of emergency response protocols, cellblock contingencies, the mechanics of transporting inmate witnesses from the detention facilities to the courthouse, the names of the facilities from which inmate witnesses were transported, the number of deputies assigned to transport inmate witnesses, and which communication channels the Marshals used to communicate while transporting the inmate witnesses. ECF No. 33 at 8; ECF No. 22-1 at 20–21. The court accordingly grants Defendants' motion for reconsideration insofar as it asks the court to clarify the

scope of its summary judgment order to "exclude those 7(E) materials that Plaintiff represented to the Court it was not challenging." ECF No. 30 at 6.

The court also exercises its discretion to further tailor its summary judgment order as to the documents that remain in dispute. Exemption 7(E) protects from disclosure law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). There is no dispute that the records at issue are law enforcement records. But to properly invoke exemption 7(E), the government must also identify "what procedures are at stake" and how disclosure of the withheld material "could reveal such procedures." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1102 (D.C. Cir. 2014) ("*CREW*"); *see also Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 246 (D.D.C. 2013) (explaining that "the government must provide sufficient facts and context to allow the reviewing court to deduce something of the nature of the techniques in question" (cleaned up)). In addition, the agency must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

Here, some of the information Defendants ask to withhold involves details about Fackrell and Cramer's custody and trial, without any showing that those details would reveal techniques or procedures for prosecutions. On the other hand, some information describes more general security and operational protocols, which could reasonably reveal techniques or procedures to carry out prosecutions. The court addresses each of those categories in turn.

As to the first category of information—facts specific to Fackrell and Cramer—Defendants have failed to show what techniques or procedures would be revealed by its disclosure. This includes how they were restrained during their movements from the BOP facility to the courthouse and in the cellblocks and the non-public areas of the courthouse; where Fackrell and Cramer were held in the courthouse; the numbers of deputies present during Fackrell and Cramer's trial or used to move them around the courthouse; and the locations (and co-locations) of any witnesses held in custody for the purposes of the trial. *See* ECF No. 30-2 at 2, 4, 6, 8. Aside from describing those categories of materials, Defendants simply assert that they describe the "operational procedures used by the USMS with respect to protective operations for a high threat trial." ECF No. 30-2 at 2, 6, 8. But that conclusory assertion does not provide any meaningful explanation of "what procedures are at stake" or how disclosure of those facts "could reveal such procedures." *CREW*, 746 F.3d at 1102; *see Woodward v. U.S. Marshals Serv.*, 534 F. Supp. 3d 121, 131 (D.D.C. 2021) (rejecting agency's assertion that disclosure would reveal "non-public investigative methods utilized to investigate a fugitive" as "too vague to justify withholding" under exemption 7(E)); *Elec. Priv. Info. Ctr. v. Customs & Border Prot.*, 160 F. Supp. 3d 354, 359 (D.D.C. 2016) (concluding that the agency's declaration indicating that the withheld materials pertain to the capabilities and use of an intelligence system and the agency's "processing of international travelers," was "minimally descriptive" and did "not provide the Court with sufficient detail regarding the law enforcement techniques or procedures the defendant seeks to protect"). The specific facts of Fackrell and Cramer's custody and trial do not themselves "spell[] out" any procedures. *CREW*, 746 F.3d at 1102.

Defendants also have not shown how information specific to Fackrell and Cramer's custody and trial would allow someone "to extrapolate what the procedures are from the

5

information contained therein." *Id.*; *see Advancement Project v. U.S. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 146 (D.D.C. 2021) (concluding that the agency did not justify an exemption 7(E) withholding of information including "the location of an operation, the purpose of the operation, who is being targeted, whether it is a joint venture between other federal or state and local agencies, and the number of staff and bed space in a detention facility" because "releasing those pieces of information would not necessarily reveal anything about a law enforcement technique, procedure, or guideline" and "if it would, [the agency] has not spelled out how" (cleaned up)); *Whittaker v. U.S. Dep't of Just.*, No. 18-cv-01434, 2019 WL 2569915, at *3 (D.D.C. June 21, 2019) (concluding that records were not protected under exemption 7(E) where the defendants failed to explain how the records might "implicitly reveal the technique or procedure used to gather information"). Put simply, it is not evident how the withheld information containing facts specific to the conditions of Fackrell and Cramer could reveal the sort of general techniques and procedures used to carry out prosecutions contemplated by exemption 7(E). Defendants shall accordingly disclose this information.[1]

On the other hand, the court concludes Defendants have adequately justified withholding information pertaining to deputy equipment; the means of communications during the transport of the inmates; the number of deputies assigned, in a more general sense, to the district or trial; the

---

[1]   Indeed, much of the information withheld concerns facts that would have been observable by people outside of law enforcement, including Fackrell and Cramer themselves and, in some instances, anyone who was present at trial. And it is difficult to see how facts about the number of deputies present, restraints, and cells used on particular days eight years ago and that were observable by people outside of law enforcement could "create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP*, 562 F.3d at 1194); *see also Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 832 n.67 (D.C. Cir. 1979) (explaining that exemption 7(E) does not protect "routine techniques and procedures already well known to the public"); *Blanton v. Dep't of Just.*, 64 F. App'x 787, 789 (D.C. Cir. 2003) (explaining that exemption 7(E) ordinarily protects from disclosure information "not generally known to the public").

areas and items to be inspected within the courtroom; and general policies about the movement or location of defendants or in-custody witnesses. *See* ECF No. 30-2 at 2–4, 6, 8. Although Defendants' legal arguments under the text of 7(E) were and remain wanting, these materials, by their nature, are or would reveal generalized procedures or, as Defendants explain, are part of an "Operational Plan" that "provides/describes the security measures and the staff involved with the operational details of a high threat trial." ECF No. 30-2 at 3; *see also* ECF No. 30-1 ¶ 15 (explaining that the materials "describe the procedure for transporting the inmates from the BOP facilities to the courthouse and subsequent movements of the witnesses within the courthouse"). Defendants' descriptions of the contents of these records show how the withheld material would disclose security procedures used to carry out prosecutions. *See, e.g.*, ECF No. 30-2 at 4 (describing the withheld materials as including "the areas and items to be inspected within the courtroom by USMS personnel to ensure weapons and contraband were not present" and "the communication channels to be used and the call signs to be used on USMS radios"). Defendants have accordingly satisfied their burden to show "what procedures are at stake" for these categories of information and how disclosure of this information "could reveal such procedures," either because the procedures would be "spelled out in the documents" or could be "extrapolate[d] . . . from the information contained therein." *CREW*, 746 F.3d at 1102; *see also Advancement Project v. U.S. Dep't of Homeland Sec.*, No. 19-cv-52, 2022 WL 4094061, at *10 (D.D.C. Sept. 7, 2022) (concluding that the agency met exemption 7(E)'s requirement to show that the withheld information would disclose law enforcement techniques, procedures, or guidelines where the information's "very nature—as guidelines—means that disclosure would reveal [the agency's] 'guidelines for law enforcement'" (quoting 5 U.S.C. § 552(b)(7)(E))).

Defendants have also explained how releasing this information "would provide sensitive data (such as the USMS's capabilities for providing prisoner, witness, and public security) to individuals who seek to disrupt and/or threaten judicial proceedings." ECF No. 30-2 at 3; *see also* ECF No. 30-1 ¶ 16 (explaining that "the release of operational staffing and planning operation would potentially put the USMS's court security related tactics and procedures at risk of exploitation by potential bad actors during future trials where the USMS must provide security and transport inmates associated with those trials"). Defendants have therefore met the "relatively low bar" to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP*, 562 F.3d at 1194). Defendants' redactions of this information were therefore proper under exemption 7(E).

For the same reasons, the court concludes Defendants have satisfied their burden under exemption 7(E) as it relates to how to out-process Fackrell and Cramer from the BOP facility for transport to the courthouse; the After Action Review Report; and email communications relating to the request for additional personnel, insofar as the information withheld describes general policies, but not insofar as the information states facts specific to Fackrell and Cramer. *See* ECF No. 30-2 at 8 (explaining that the out-processing information "contains detailed information on how Mr. Cramer and Mr. Fackrell were to be out-processed from the USP facility and discharged to the USMS custody for transport to the courthouse"); *id.* at 5 (explaining that the After Action Review Report is "designed to debrief appropriate USMS personnel regarding the events that occurred during the trial and inform actions taken for future high threat trials"); *id.* at 6 (explaining that the email communications regarding internal staffing requests "are indicative of law enforcement security assessments pertaining to high threat trial operations"). Defendants have also

shown how this information "might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP*, 562 F.3d at 1194); *see* ECF No. 30-2 at 3, 5–9.

## II.    Conclusion

The court accordingly grants Defendants' motion for reconsideration, ECF No. 30, in part and denies it in part. The parties shall meet, confer, and file a joint status report by April 10, 2026, proposing a schedule for next steps consistent with this opinion.

_____

AMIR H. ALI
United States District Judge

Date:   March 26, 2026